IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE MITCHELL COMPANY, INC.,     :

      Plaintiff,                              :

vs.                                                      :          CA 07-0177-KD-C

JOSEPH J. CAMPUS, III, et al.,            :

      Defendants.

## ORDER

      This cause is before the Court on what remains of defendant Edsel F. Matthews' motion to compel plaintiff to adequately respond to his first set of discovery requests (*compare* Doc. 131 *with* Doc. 146), Matthews' brief on counting interrogatory subparts (Doc. 147), and plaintiff's reply (Doc. 161). Having considered the substantive contents of these pleadings, and all other pertinent portions of the file, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).

## FINDINGS OF FACT

      1.      On January 28, 2008, Matthews served his first set of interrogatories, requests for production and requests for admission upon The Mitchell Company. (Doc. 131, Exhibit A) The interrogatory portion of this

document reads, as follows:

### INTERROGATORY NO. 1

Identify each person who has any personal knowledge or information about, or who possesses or controls any data, documents, evidence or other tangible items regarding, the allegations of the complaint or Plaintiff's claims; and for each such person, state in detail all such facts, information, data, documents, evidence, or tangible items.

### INTERROGATORY NO. 2

Separately list each legal matter (transaction, case, general advice, or other) as to which TMC claims it established an attorney-client relationship with defendant Matthews at any time; and for each such matter, state the date the relationship was established, state TMC's understanding or contention concerning the scope or terms of the engagement, state the work performed by defendant Matthews during the course of the representation, and identify the date the representation ended.

### INTERROGATORY NO. 3

For each legal matter identified in the immediately-preceding interrogatory, separately state the position of TMC as to whether defendant Matthews failed to perform satisfactorily, or made any omission in his performance of, any work that TMC engaged defendant Matthews to perform during the course of that representation; and for each such claimed failure to perform, state specifically how defendant Matthews' performance was unsatisfactory, and identify all employees, representatives, or agents of TMC who have any personal knowledge or who possess any documents relating to TMC's position that defendant Matthews failed to perform satisfactorily.

### INTERROGATORY NO. 4

Please identify by date, payee, and amount, all checks written or other payments made by TMC to defendant Matthews or others for legal work on any legal matter identified in response to Interrogatory No. 2.

## INTERROGATORY NO. 5

Separately list each legal matter (transaction, case general advice or other), handled by Defendant Matthews for a person or entity other than TMC, which TMC claims caused or resulted in a conflict of interest for Defendant Matthews in performing legal work for TMC.

## INTERROGATORY NO. 6

List all employees, agents, or representatives of TMC, who had any communications (written or oral) with Defendant Matthews at any time, and for each such individual, provide the inclusive dates of his employment or other relationship with TMC, list the position(s) held by each individual during that time, and provide detailed job descriptions.

## INTERROGATORY [NO.] 7

Separately state the date of, parties to, and substance of each communication between an employee, agent, or representative of TMC, identified in response to the preceding interrogatory, and Defendant Matthews.

## INTERROGATORY NO. 8

In Paragraph 18 of TMC's First Amended Complaint, TMC alleges Defendant Matthews, while representing TMC in various transactions was "[s]imultaneously . . . representing the Conspirators, Campus and Young without disclosing to The Mitchell Company that Defendant Matthews was in fact an attorney, or an agent for those individuals and companies."

3

(TMC's First Amended Complaint, ¶ 18 [hereinafter "Complaint"]). TMC further avers that this 'simultaneous representation' "denied The Mitchell Company its right to independent counsel, its ability to make informed decisions, the benefit of the exercise of professional judgment by an impartial attorney and counsel free from adverse interests and self-dealing." (Compl., ¶ 18). With respect to these allegations, please specifically identify the alleged "simultaneous representations" and state, describe or list all facts, information, knowledgeable witnesses, and documents relating to these allegations. Include all alleged statements or representations made by Defendant Matthews that relate to these allegations and identify the substance of the alleged representation, the date and place the alleged representation was made, and all documents containing or relating to such alleged representations.

## INTERROGATORY NO. 9

In Paragraph 26 of TMC's Complaint, TMC alleges Defendant Matthews "knowingly and/or willfully and/or recklessly misrepresented [to TMC that] . . . the purchase price of the properties at issue was the lowest and best price available; [Defendant Matthews was] acting in [TMC's] best interest; . . . the properties had not been marked up in order to favor [Matthews, Campus, and Young]; . . . Matthews had no conflict of interest with regard to Plaintiff; . . . the properties were being recommended to Plaintiff because purchase was in Plaintiff's best interest . . . " (Compl., ¶ 26). TMC also contends that Defendant Matthews "failed to provide an accurate picture of the properties and financing in question." (*Id.*). With respect to these allegations, please specifically identify each property as to which TMC alleges Matthews made the alleged misrepresentation, and state, describe or list all facts, information, knowledgeable witnesses, and documents relating to these allegations. Include all alleged statements or representations made by Defendant Matthews that relate to these allegations and identify the substance of the alleged representation, the date and place the alleged representation was

4

made, and all documents containing or relating to such alleged representations.

## INTERROGATORY NO. 10

In Paragraph 27 of TMC's Complaint, TMC alleges Defendant Matthews "knowingly and/or willfully and/or recklessly suppressed . . . information necessary for the Plaintiff to make a [sic] informed decision; . . . [and that Defendant Matthews] failed to provide full disclosure and/or provided inaccurate, misleading and untruthful information; . . . provided false or misleading information with the intent to encourage the Plaintiff to invest in the properties; . . . manipulated the affairs of the corporation to the Plaintiff's detriment[;] . . . utilized information and their strategic position for their own preferment; . . . [and] engaged in the dissemination of false information and/or the concealment of material information from Plaintiff." (Compl., ¶ 27). TMC contends Defendants Campus, Young, and Matthews "implemented a scheme, course, and conspiracy of fraudulent acts in order to deceive Plaintiff [and that s]uch actions constitute an ongoing pattern and practice of fraud." (Compl., ¶ 28). With respect to these allegations, please specifically identify all information Matthews allegedly suppressed and state, describe or list all facts, information, knowledgeable witnesses, and documents relating to these allegations. Include all alleged statements or representations made by Defendant Matthews that relate to these allegations and identify the substance of the alleged representation, the date and place the alleged representation was made, and all documents containing or relating to such alleged representations.

## INTERROGATORY NO. 11

In Paragraph 58 of TMC's Complaint, TMC alleges that Defendant Matthews "acted in concert [with Campus and Young], in order to accomplish a variety of illegal schemes, including but not limited to, multiple improper, illicit and illegal

5

transactions, the overall scheme of which was recommending properties for purchase by The Mitchell Company which were overvalued to Plaintiff's detriment and hiding the true nature of the transactions in question." (Compl., ¶ 58). With respect to these allegations, please specifically identify each "illegal scheme[]" or "illicit and illegal transaction[]" and state, describe or list all facts, information, knowledgeable witnesses, and documents relating to these allegations. Include all alleged statements or representations made by Defendant Matthews that relate to these allegations and identify the substance of the alleged representation, the date and place the alleged representation was made, and all documents containing or relating to such alleged representations.

**INTERROGATORY NO. 12**

In Paragraph 72 of TMC's Complaint, TMC alleges that Defendant Matthews, while acting "at all times relevant to the matters contained herein [as] counsel for The Mitchell Company in the various transactions complained of . . . he negligently failed to disclose his prior relationships with Defendants Campus, Young, and the entities controlled and owned by them; . . . he negligently failed to disclose his actual participation with Defendant[s] Campus, Young and the entities controlled and owned by them; . . . he negligently failed to render independent and honest advice to The Mitchell Company; . . . he negligently deprived The Mitchell Company of the benefit of the exercise of professional judgment by an impartial attorney and counsel free from adverse interests and self-dealing; . . . he negligently participated and facilitated the actions of Defendants Campus, Young and the entities they controlled to the detriment of The Mitchell Company." (Compl., ¶ 72). TMC avers that "Matthews knowingly participated in the commission of the above alleged actions in violation of the standard of care applicable to him as counsel for The Mitchell Company under the laws of the State of Florida." (Compl., ¶ 73). With respect to these allegations, please specifically identify each alleged act of negligence or failure to meet the standard of care, and state, describe or list all

6

facts, information, knowledgeable witnesses, and documents relating to these allegations. Include all alleged statements or representations made by Defendant Matthews that relate to these allegations and identify the substance of the alleged representation, the date and place the alleged representation was made, and all documents containing or relating to such alleged representations.

## INTERROGATORY NO. 13

In its Complaint, TMC further alleges that Defendant Matthews breached fiduciary duties owed to TMC and negligently and wantonly failed to exercise reasonable care not to injure or damage TMC. With respect to these allegations, please specifically identify each occasion that Matthews allegedly breached a fiduciary duty, and state, describe or list all facts, information, engagements, knowledgeable witnesses, and documents relating to these allegations. Include all alleged statements or representations made by Defendant Matthews that relate to these allegations and identify the substance of the alleged representation, the date and place the alleged representation was made, and all documents containing or relating to such alleged representations.

## INTERROGATORY NO. 14

Separately list each and every allegedly misleading or false statement or misrepresentation that Plaintiff claims Matthews made at any time relating to Plaintiff's claims and allegations, and, for each, further state the date of the alleged misrepresentation, identify any and all witnesses with personal knowledge of the alleged misrepresentation, describe in detail the substance of the alleged misrepresentation, and identify all documents containing or relating to each alleged misrepresentation.

## INTERROGATORY NO. 15

7

Separately list each and every material fact that Plaintiff claims Defendant Matthews allegedly suppressed, and, for each, identify any and all witnesses with knowledge of the suppression, describe in detail the substance of the alleged suppression, and identify all documents containing or relating to each alleged suppression.

**INTERROGATORY NO. 16**

For each real estate transaction listed in the Complaint or as to which TMC claims any improper conduct by Defendant Matthews, separately describe in detail the site location, due diligence, and decision-making process that TMC undertook before TMC purchased the properties, including a description of how Plaintiff learned of the properties, any and all discussions between or among TMC's employees, agents, and board members concerning TMC's purchase of the properties, any and all board meetings concerning TMC's purchase of the properties, any and all negotiations with third parties concerning purchase of the properties, any and all appraisals, market surveys, valuations, and other similar documents or information available to TMC concerning each property, and all due diligence performed by TMC concerning each property. For each transaction, separately identify the TMC agents, employees, officers or directors personally involved in the recommendation of the purchase to TMC, the negotiation of TMC's purchase of the property with the seller, or any other aspect of TMC's purchase of the property.

**INTERROGATORY NO. 17**

Please identify each and every expert witness whom TMC expects to call at the time of trial by providing such expert's name, address, and occupation; place of employment; qualifications to give an opinion, including a list of all publications authored by the witness within the preceding ten (10) years (or if such information is available on the expert's curriculum vitae, such curriculum vitae may be attached

8

instead); all opinions to be expressed in this case and the basis and reasons therefor; the data or information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the compensation to be paid for the study and testimony; and, a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

## INTERROGATORY NO. 18

Please separately identify, state, or describe any and all documents, information, statements and/or representations TMC and its attorneys have provided to any expert witness identified in the answer to the immediately preceding interrogatory.

## INTERROGATORY NO. 19

Please separately identify any and all documents, information, statements, and/or representations TMC and its attorneys have received from any potential expert witness identified in response to Interrogatory No. 17.

## INTERROGATORY NO. 20

Specify separately by type and amount each and every item of injury or damage for which TMC does or may seek compensation or other recovery in this action, state specifically all dollar amounts claimed for each item of injury or damage, and describe the method by which TMC has computed the dollar amount as to each such item of injury or damage.

## INTERROGATORY NO. 21

For each property identified in the Complaint, please identify:

(a)     When TMC first became aware that the property was for sale;

(b) Every action taken by TMC to assess the fair market value of the property;

(c) Every action taken by TMC to assess the developmental potential of the property;

(d) Every person, agent, or appraiser involved in such actions;

(e) Every action taken to develop or sell the property since TMC acquired the property; and

(f) Every cost associated with such development or sale.

## INTERROGATORY NO. 22

Please identify each office[r], director, agent or employee of TMC who has any education, skill, training, experience, or knowledge concerning real estate valuation, investment or development; and for each such person, state and describe his or her education (including any degrees or certifications), training, experience, and knowledge.

## INTERROGATORY NO. 23

Please identify all real estate owed, bought, sold, developed and/or managed by TMC in the Florida Panhandle or Baldwin or Mobile Counties, Alabama, since 1997; and for each property, state or describe the date TMC acquired or otherwise first conducted any activity concerning the property, the purchase or sale price, the nature of TMC's activity concerning the property (e.g. development into a subdivision), and the current status of TMC's ownership or other activity regarding the property.

## INTERROGATORY NO. 24

> To the extent TMC denies in whole or [in] part any of the Requests for Admission herein, please state, describe and/or identify all facts, information, knowledgeable witnesses, and documents on which TMC relies in denying a request for admission.

(*Id.* at 5-15 (emphasis in original))

2.     Plaintiff served its responses to the foregoing interrogatories on March 10, 2008. (*See* Doc. 131, Exhibit C) Plaintiff substantively responded or objected to interrogatories 1 through 10 but refused to answer interrogatories 11 through 24 on the basis that they exceeded "**the permissible amount allowed in this case.**" (*Id.* at 9 (emphasis in original)) In response to Interrogatory No. 2, plaintiff stated the following: "**Objection is made to this Interrogatory and its *5 subparts* on the grounds that the information sought is equally available to the defendant Matthews in that he, as TMC counsel presently knows or has access to the legal matters he has handled for the company.**" (*Id.* at 3-4; *see also id.* at 3 ("**The Plaintiff objects to the last subpart of Interrogatory Number 1 as it is overly broad, unduly burdensome and places upon the plaintiff an impossible burden to identify all facts, information, data, documents, evidence, or tangible items within the possession and knowledge of each of the foregoing witnesses.**"); *id.* at 7 ("**The remaining subparts of this interrogatory [8] are objected to as**

11

**they are overly broad and are not limited in time or scope and to answer would require the Plaintiff to outline any and all conversations and dates relating in any way to the allegations in the complaint which is improper and overly broad.**"))

3.      On April 21, 2008, defendant Matthews filed his motion to compel plaintiff to adequately respond to his first set of discovery requests. (Doc. 131) The Court entertained the parties' oral arguments on May 15, 2008. (*See* Doc. 146, at 2) After the hearing, the Court entered a discovery order in which the parties were given the following instructions with regard to interrogatories 11 through 24:

> The Mitchell Company has responded to the first ten interrogatories but, pursuant to their count, their responses to the first ten interrogatories and the discrete subparts contained therein equal or exceed the twenty-five interrogatory limit.[1]
>
> Matthews spoke to this argument briefly in his motion to compel at pages 5-6 but does not provide a clue as to his counting analysis. His general citation to Rule 33(a) and the 1993 Advisory Committee Notes does not provide an adequate basis for the Court to determine that TMC's count of the total number of interrogatories is flawed.
>
> It is clear from looking at the interrogatories that were attached to the motion to compel that they contain explicit or

---

[1]      The Rule 16(b) scheduling order entered in this case on May 31, 2007, specifically limits each party to service on any other party of no "more than **25** interrogatories, including all discrete subparts[.]" (Doc. 13, ¶ 10.a.)

12

implicit subparts. Since this question of deciding the true number of interrogatories that should be counted against the limit on interrogatories is one of first impression in the undersigned's experience and since the parties have not referenced any decisions on this issue by the judges of this Court, before adopting an analysis standard and applying that standard to the interrogatories at issue, it is preferred that Matthews submit an additional brief. Therein he should discuss the applicable standard(s) to be employed and his interpretation of when his set of 24 numbered interrogatories actually reached the limit.

Accordingly, a ruling on that portion of the motion to compel answers to interrogatories 11-24 is **DEFERRED PENDING THE FILING OF A SUPPLEMENTAL BRIEF** by Matthews. The additional brief shall contain, at a minimum, an analysis as to whether interrogatories 1-10 contain discrete subparts that when counted as separate interrogatories equal or exceed the limit of twenty-five. If Matthews determines that interrogatories 1-10 do not exceed the limit, he shall also provide his analysis as to when the limit is reached. Matthews shall complete his count and file a supplemental motion not later than the close of business on **May 23, 2008.**

(Doc. 146, at 3-4 (emphasis in original; footnote added))

4.     Matthews filed his brief on counting subparts on May 21, 2008.

(Doc. 147) Therein, he generally makes the following argument:

The standard used by District Courts within the Eleventh Circuit in counting subparts to interrogatories is the "related question" test, which states that subparts that are factually and logically related to an necessarily subsumed within the primary question are inclusive and should not be counted as separate interrogatories. Matthews hereby voluntarily withdraws all subparts requesting a separate identification of documents. The remaining subparts to Interrogatory [] Nos. 1-24 constitute a

13

> total of twenty-five (25) interrogatories and therefore do not exceed the permissible limit under Fed.R.Civ.P. 33(a) or this Court's Scheduling Order. Matthews requests this Court compel Plaintiff to fully respond to INT Nos. 11-24.

(*Id.* at 1) More specifically, Matthews makes the following arguments:

> Plaintiff has improperly counted INT No. 1 as two interrogatories. However, this is a standard interrogatory concerning persons with knowledge and a subpart requesting a short summary of the knowledge and information these persons possess. Such an interrogatory is critical to elicit facts and narrow issues for trial. *Williams*, 2007 WL 1630875, *2. In *Candela*, the Northern District of Florida found a similar interrogatory, which asked for "persons with documentary evidence in their possession, custody or control, what they ha[d], where [it was], and when it was prepared," counted as one single interrogatory. *Candela*, 2008 WL 217119, *2. The *Candela* court also found a "standard question about persons with knowledge and the subject area of their knowledge" counted as one interrogatory. *Id.* **INT No. 1 should be counted as one interrogatory** under the same analysis as in *Candela*.

> .      .      .

> The question [Interrogatory No. 2] contains four related subparts: (1) the date the relationship began; (2) TMC's understanding of the scope of the relationship; (3) the work performed by Matthews during the relationship; and (4) the date the relationship ended, that are all factually and logically subsumed within the primary question. *Williams*, 2007 WL 1630875, *2. Each subpart requests information relating to the relationships identified by Plaintiff in response to the interrogatory and is, therefore, "directed at eliciting details concerning a *common theme*." *Cardenas v. Dorel Juvenile Group, Inc*., 231 F.R.D. 616, 620 (D. Kansas 2005).

> Also, the fact that this interrogatory seeks information

14

about multiple attorney-client relationships does not mean it should be counted as separate interrogatories. *See Cardenas*, 231 F.R.D. at 620 (finding "the fact that [the interrogatory] seeks information about multiple alleged design defects does not turn it into multiple interrogatories."). The subparts of this interrogatory meet the related question test and are inclusive. **INT No. 2 should be counted as one interrogatory**.

Plaintiff has improperly counted each of the subparts of INT No. 2 as five separate interrogatories. . . . Plaintiff's counting of the subparts requesting the date each relationship began and the date each relationship ended is particularly restrictive of Fed.R.Civ.P. 33(a). Subparts such as these fall squarely within the Advisory Committee's Notes to the 1993 amendment to Rule 33 which was intended to clarify the numerical limitation on interrogatories. . . .

The other two subparts regarding TMC's understanding of the scope of each relationship and the work Matthews performed as a result of each relationship are "simply designed to obtain additional details concerning the general theme presented in the primary interrogatory question" and are therefore subsumed within the primary request. *Manship v. U.S.,* 232 F.R.D. 552, 556 (M.D. La. 2005). *See also ULLICO III,* 2006 WL 23998745, * 4 (finding the subparts of an interrogatory requesting the factual basis for a specific claim in the Counterclaim regarding impairment of an Auxiliary Plan, as well as (1) describing unfunded liabilities of the Plan and (2) the Plan's failure to provide benefits, to be logically interrelated and counting only as one interrogatory).

.      .      .

Plaintiff incorrectly counts INT No. 3 as three separate interrogatories. However, these subparts are all factually related. For each legal matter listed in response to INT No. 2, Plaintiff is requested to state (1) whether Matthews failed to satisfactorily perform, (2) if so, how, and (3) identify TMC employees with

knowledge of documents that relate to TMC's position. These requests are all logically connected and intended to elicit specific details concerning one common theme: TMC's allegation that Matthews performed unsatisfactory work for TMC. These subparts are, therefore, inclusive and should not be counted separately. *Williams*, 2007 WL 1630875, *2; *Ryan*, 2005 WL 662724, *1.

Further, the request for identification of knowledgeable persons is equivalent to the Advisory Committee's example of an inclusive subpart that requests the identification of persons present for certain communications. *See Theobles*, 247 F.R.D. at 485 (finding a subpart which requests identification of persons with knowledge falls within the categories of "'time, place, persons present and contents,' which, according to the advisory committee, are subparts of a single interrogatory."). . . . For these reasons, **INT No. 3 should be counted as one interrogatory**.

.     .     .

Plaintiff improperly counted INT No. 6 as three separate interrogatories. This interrogatory contains one primary question: identification of employees who had communication with Matthews, and three related subparts: (1) the dates of employment; (2) positions held; and (3) job descriptions. These subparts are logically related and subsumed within the primary question. *Williams*, 2007 WL 1630875, *2. **INT No. 6 should be counted as one interrogatory.**

In *Candela*, the Northern District of Florida addressed an almost identical interrogatory which requested "information about every employee of Plaintiff who has quit, been fired, or resigned since 2000, with their addresses, and the date they terminated their employment." *Candela*, 2008 WL 217119, *2. The court found these subparts to be "related and connected questions" that should not be counted as separate interrogatories. *See id*. Under this analysis, INT No. 6, which requests the

16

identity of employees, as well as (1) the date of their employment, (2) positions held and (3) job descriptions, should also only be counted as one interrogatory. *See also ULLICO II,* 2006 WL 2398744, *3 (finding an interrogatory that requested an identification of persons as well as a "description of such persons' job titles, responsibilities and total compensation over the past two years . . . [to be] part of a single line of inquiry, even though several pieces of information are sought."); *ULLICO I,* 2006 WL 2398742, *4 (same).

.     .     .

INT Nos. [8]-13 are similar contention interrogatories which follow the same format by citing allegations of Plaintiff's Complaint, requesting substantive information relating to allegations and seeking the same corollary information: supporting facts, persons with knowledge and the time, place and substance of any alleged representations. [] INT Nos. 9-13 address Plaintiff's allegations that Defendant Matthews made false statements, misrepresentations (INT No. 9) and omissions (INT No. 10), participated in illegal schemes (INT No. 11), committed acts of professional negligence (INT No. 12) and breached his fiduciary duties (INT No. 13). [] INT Nos. 8-13 are exactly the type of interrogatories which are designed to narrow the factual issues for deposition and trial and ensure all parties possess the relevant facts. *Williams*, 2007 WL 1630875, *2. [] Restricting Matthews' ability to elicit specific facts, persons and documents in support of Plaintiff's claims would "unnecessarily limit [his] fact-gathering ability." []

.     .     .

In addition, the fact that these interrogatories request information relating to *multiple* alleged simultaneous representations, statements, omissions, illegal schemes, acts of professional negligence and breaches of fiduciary duty does not mean they should be counted as separate interrogatories. This "analysis for counting subparts is substantially flawed because

17

it is based on an analysis of the number of responses that the interrogatory elicits." *ULLICO III,* 2006 WL 2398745, *2. The proper test for determining whether subparts are discrete is to ask whether they are factually related to the primary question, not whether they elicit numerous responses. *See also Candela*, 2008 WL 217119, *3 (finding an interrogatory that asked what each of thirty (30) individuals did to interfere with the business relationship at issue to be "sufficiently related" so as to count only as one interrogatory).

.     .     .

In *ULLICO II*, the court found a request for details relating to an allegation of the complaint concerning corporate waste which linked two corporate entities together did not count as two interrogatories simply because the defendant had linked these two corporate entities together in its request. *See* [*id*.] . . ., *4. Thus, where Plaintiff has linked multiple instances of alleged simultaneous representation[s], misrepresentations, omissions, or conduct into a single cause of action against Matthews, Matthews is entitled to similarly link these multiple instances of allegedly actionable conduct in his requests for information relating to these allegations. *Id.*

Each of these contention interrogatories is related to one common theme: the allegations asserted by Plaintiff in each of its separate claims or counts against Defendant Matthews. An overly restrictive reading of Rule 33(a) in counting the subparts to these interrogatories would unnecessarily limit Matthews' anility to gather facts relating to Plaintiff's claims and narrow the issues for trial. *Williams*, 2007 WL 1630875, *2. **INT Nos. 8-13 should be counted as six separate interrogatories**.

.     .     .

The subparts to INT Nos. 14 and 15 are all factually related and intended to elicit details concerning a common theme: Plaintiff's allegation that Matthews made false statements and/or

18

omissions. [] Further, most of these subparts fall directly within the example provided in the Advisory Committee Notes to Rule 33, which explains that subparts seeking information relating to communications such as the time, place, persons present and substance of the communications do not count as separate interrogatories. [] INT Nos. 14 and 15 follow[] this format in requesting the date, witnesses with personal knowledge and substance of alleged misrepresentations and/or omissions.

The Middle District of Louisiana addressed a similar interrogatory in *Manship* which requested information about certain communications as well as the substance, dates, places and identifications of persons who participated in the communications. *Manship*, 232 F.R.D. at 556. The court found this interrogatory requested "the content, time, place and persons participating in such communications, information which is logically and factually subsumed within and necessarily related to the primary interrogatory question." *Id*. For this reason, the court in *Manship* did not count these subparts as separate interrogatories. *See* [*i*]*d*. . . . INT Nos. 14 and 15 contain the same inclusive subparts and therefore fall within the example provided by the Advisory Committee. **INT Nos. 14 and 15 should, therefore, be counted as two interrogatories.**

.     .     .

**INT No. 16 should be counted as two separate interrogatories.** The primary question of the first interrogatory asks for information relating to TMC's due diligence and decision making process for purchasing the properties at issue. The related subparts of this question ask how TMC learned of the properties, discussions between agents and board members concerning the properties, board meetings dealing with the purchase of the properties, and the identity of the TMC agents or employees who recommended the purchase to TMC. These merely ask for the "'who, what, when, where and how' information which relates to the common theme presented in the

19

request . . ." *Manship*, 232 F.R.D. at 556. These subparts are logically and factually subsumed within the primary question. *Williams*, 2007 WL 1630875, *2; *Candela*, 2008 WL 21711, *1.

Further, this interrogatory should not be counted as six separate interrogatories merely because it seeks information relating to six separate properties listed in Plaintiff's Complaint. Such a calculation would be "substantially flawed because it is based on an analysis of the number of responses that the interrogatory elicits." *ULLICO III*, 2006 WL 2398745, *2. *See also Candela*, 2008 WL 217119, *3 (finding an interrogatory asking for information on each of 30 individuals to be "sufficiently related" so as to count only as one interrogatory). Also, Plaintiff linked these properties together in its Complaint in order to form the basis for each of its causes of actions against Matthews. (Complaint, ¶ 13). Therefore, Matthews is entitled to link these properties together in his requests to Plaintiff in order to elicit facts relating to the claims and defenses at issue. *Cardenas*, 231 F.R.D. at 620; *ULLICO II*, 2006 WL 2398744, *4.

The second aspect of this interrogatory asks about negotiations between TMC and third parties concerning TMC's purchase of the properties at issue. The related subpart of this interrogatory asks for the identity of TMC agents or employees involved in the negotiations with third parties. The request for the identification of persons knowledgeable about the primary request is not considered a separate interrogatory. *Theobles*, 247 F.R.D. at 485. Thus, **INT No. 16 should be counted as two interrogatories.**

.     .     .

INT No. 17 is a standard request asking for information about the responding party's retained expert(s). In *Candela,* the court addressed a similar interrogatory which asked for "the expert witnesses Plaintiff intend[ed] to call at trial and then ask[ed] related and connected questions such as their addresses,

qualifications, subject matter of their testimony, and grounds for their opinions." *Candela*, 2008 WL 217119, *2. The court found the subparts of this interrogatory to be factually and logically related to the primary question and therefore counted the request as one interrogatory. *Id*. **INT No. 17 should be counted as one interrogatory** under the same analysis.

.     .     .

INT No[s]. 18 and 19 do not contain subparts. These interrogatories merely ask for the identity and description of certain documents and information. **INT Nos. 18 and 19 should be counted as only two interrogatories**.

.     .     .

Int No. 20 should be counted as one interrogatory. The primary question is a standard interrogatory directed at Plaintiff's claim for damages. The related subparts ask Plaintiff to specifically state dollar amounts and the method for computation. The court in *Candela* addressed a similar interrogatory which requested a "list of damages, and includ[ed] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what." *Candela*, 2008 WL 217119, *2. The court found the subparts of this interrogatory to be factually subsumed within the primary interrogatory and that they should not, therefore, be counted as discrete subparts. [] Under this analysis, **INT No. 20 should also be counted as one interrogatory**.

.     .     .

INT No. 21 should be counted as one interrogatory. The primary question seeks information relating to TMC's assessment of the developmental potential and development of the properties at issue. The subparts of this request ask for the time frame of these actions (when TMC first became aware that

21

the property was for sale), the actions taken, the persons involved in these actions, and the costs associated therewith. These subparts are all directed at eliciting details concerning a common theme: TMC's assessment and development of the properties at issue and are, therefore, all inclusive. *See Ryan*, 2005 WL 662724, *1. Also, the fact that this request seeks information relating to six separate properties does not mean it should be counted as six separate interrogatories. *See ULLICO III,* 2006 WL 2398745, *2; *Cardenas,* 231 F.R.D. at 620; *ULLICO II*, 2006 WL 2398744, *4. **INT No. 21 should be counted as one interrogatory.**

.    .    .

INT No. 22 should be counted as one interrogatory. The primary question of INT No. 22 asks Plaintiff to identify certain TMC employees or agents, and the related subpart requests that Plaintiff list the education, training, experience or knowledge of the TMC employees or agents identified in response to the request. This subpart is logically and factually subsumed within the primary question and should, therefore, not be counted as a separate interrogatory. *See Williams*, 2007 WL 1630875, *2; *Candela*, 2008 WL 217119, *1. **INT No. 22 counts as one interrogatory.**

.    .    .

INT No. 23 should be counted as one interrogatory. This request seeks information relating to TMC's ownership/management of properties in a particular area during a particular time. Ths subparts to this question seek the "who, what, when, where and how" information which is logically and factually subsumed within the primary question. *Manship*, 232 F.R.D. at 556. The subparts ask for the date of purchase of the property, the sale price, the nature of TMC's use of the property, and the current status of ownership or other activity. These are all directed at eliciting details central to the common theme of the primary question and should not be counted as separate

interrogatories. *Ryan*, 2005 WL 662724, *1. **INT No. 23 constitutes one single interrogatory.**

.        .        .

Plaintiff has already responded to Matthews' First Set of Requests for Admissions, and Plaintiff only denied a portion of Request for Admission No. 2. . . . Thus, Plaintiff's duties in responding to this interrogatory will only require Plaintiff to provide facts, information and knowledgeable witnesses which support its denial of one Request for Admission. **INT No. 24 should[,] therefore, only be counted as one interrogatory.**

In addition, Plaintiff propounded an almost identical interrogatory to Matthews in its first set of discovery requests to Matthews. Matthews, however, fully responded to Plaintiff's interrogatory despite his denial of all twenty (20) of Plaintiff's Requests for Admissions to Matthews. []

.        .        .

[I]n case the Court finds INT Nos. 1-24, and their subparts, count as more than twenty-five (25) interrogatories, Matthews is willing to withdraw the following interrogatories, in the following order:

1.      INT No. 18

2.      INT No. 19

3.      INT No. 14

4.      INT No. 15

For example, if the Court finds INT Nos. 1-24 count as 26 interrogatories total, Matthews requests the Court omit INT No. 18 and compel Plaintiff to respond to INT Nos. 11-17 and 19-24. Or, if the Court finds INT Nos. 1-24 count as 27

23

> interrogatories, Matthews requests the Court omit INT No. 19
> and compel Plaintiff to respond to INT Nos. 11-17 and 20-24.
> And so on, down the list.

(Doc. 147, at 7, 7-9, 9-10, 10-11, 12, 13, 13-14, 14-15, 16-17, 17, 18, 18-19,

19, 20, 20-21, 21 & 22 (emphasis in original; footnotes omitted))

     5.     Plaintiff filed its reply brief on counting interrogatory subparts

on June 3, 2008, same reading, in relevant part, as follows:

> Matthews's interrogatories 1-10, including requests for
> identification of documents, comprise at least 25 interrogatories
> including discrete subparts. Authorities cited in Mitchell's
> previous brief (doc. 143) support Mitchell's count.[2]

---

[2]    With respect to this particular issue, plaintiff's brief in opposition to Matthews' motion to compel (Doc. 143) reads, in relevant part, as follows:

> Matthews's interrogatories 1-10 should be counted as at least 25
> interrogatories because they include discrete subparts that should be counted
> separately. For example, Matthews's interrogatory 8 asks Mitchell to identify
> instances of "simultaneous representation" by Matthews of Mitchell and other
> parties, to identify "knowledgeable witnesses . . . relating to these allegations,"
> and also to "identify . . . all documents containing or relating to such alleged
> representation." Interrogatory 8 should be counted as at least three interrogatories
> (and can actually be counted as more than that since there were multiple instances
> of simultaneous representation and Matthews asks for information about each
> instance). As another example, interrogatory 9 asks Mitchell to provide
> substantive information about five misrepresentations alleged in Mitchell's
> complaint, to also provide information about Mitchell's allegation that Matthews
> "failed to provide an accurate picture of the properties and financing in question,"
> and to identify witnesses and documents relating to these allegations.
> Interrogatory 9 should be counted as at least six interrogatories (that is, separately
> as to the allegations of misrepresentation and the allegation of failure "to provide
> an accurate picture of the properties and financing in question," and separately as
> to its requests for substantive information, witnesses, and documents about each
> such allegation), and may be counted as containing as many as eighteen

Matthews has now purportedly withdrawn the approximately six requests for document identification included in these interrogatories. At the time Mitchell objected, however, those requests were included. The propriety of Mitchell's objection to Matthews's excessive interrogatories must be considered as of the date Mitchell objected, not after Matthews's purported withdrawal.

Matthews's interrogatories, not including requests for document identification and not considering whether subparts are "discrete," include a total of more than 100 subparts by Mitchell's count. This is the type of burden the rule limiting the number of interrogatories was intended to alleviate. Matthews's method of counting, which considers virtually any question bearing any relation, no matter how attenuated, to the "primary question" as being "subsumed" within that question, would swallow the rule and render it virtually meaningless. Under that method, a party can simply make the "primary question" as broad as possible and include an unlimited number of subparts "related to" that question. [] [T]he <u>Introduction to Civil</u>

---

interrogatories (that is, separately as to each of the five misrepresentations referenced and also as to the failure "to provide an accurate picture of the properties and financing in question," and separately as to its requests for substantive information, witnesses, and documents pertaining to each of these misrepresentations and the failure "to provide an accurate picture"). Similarly, interrogatory 10 asks about several different types of misconduct alleged in the complaint (i.e., suppression, providing false information, manipulating corporate affairs, utilizing information and strategic position for Defendants' own preferment, and conspiracy) and seeks substantive information and identification of witnesses and documents pertaining to such allegations. Interrogatory 10 should be counted as at least 15 interrogatories.

Because Matthews's interrogatories 1-10 equal or exceed 25 interrogatories when each discrete subpart is counted separately, the Court should deny Matthews's motion to compel responses to the remainder of his interrogatories.

(*Id*. at 3-4)

25

<u>Discovery Practice in the Southern District of Alabama</u> (1988) states that "[c]ounsel shall not use subparts of interrogatories to evade any limitation on the number of interrogatories set by the Court in the Federal Rule 16(b) Scheduling Order." <u>Id</u>. at Part IV, ¶ A.

Mitchell discussed Matthews's interrogatories 8-10 in its previous brief (doc. 143). Matthews's interrogatory 16 is another example of the flaws in Matthews's counting method. . . . Matthews says that because the subparts are supposedly "related to" the "common theme[s]" of "TMC's due diligence and decision making process for purchasing the properties at issue," interrogatory 16 should be counted a[s] two interrogatories.

Matthews cannot transform an interrogatory that includes a number of discrete subparts into only two interrogatories simply by referring broadly to "due diligence" and "decision-making process" at the beginning of the interrogatory. Since there are six separate "real estate transactions listed in the Complaint," interrogatory 16 includes at least six interrogatories. <u>See</u> <u>In re ULLICO Litig.</u>, 2006 WL 2398744, *2, 4 (D.D.C. June 30, 2006) (discussion of interrogatories 2 and 15). It also includes at least six discrete subparts as to each transaction:

> (1)    Description of how Plaintiff learned of the property,

> (2)    Discussions between or among TMC's employees, agents, and board members concerning TMC's purchase of the property,

> (3)    Board meetings concerning TMC's purchase of the property,

> (4)    Negotiations with third parties

26

concerning purchase of the property,

(5) Due diligence performed by TMC concerning each property, and

(6) Identification of TMC agents, employees, officers, or directors personally involved in recommendation of the purchase, negotiation, or other aspects of the purchase.

Other of Matthews's interrogatories that contain multiple discrete subparts are interrogatories 2, 3, 6, 8-15, 17-19, 21, 23, 24, and possibly others.

Matthews asks the Court to compel Mitchell "to fully respond to INT Nos. 11-24" (doc. 147 at 1, 22). If the Court agrees with Matthews that one or more of these interrogatories do not exceed the 25-interrogatory limit, the Court should not compel Mitchell to "fully respond" to the interrogatory; it should rule that while Mitchell must serve a response, it is free to assert any other objections it may have to the interrogatory. See In re ULLICO Litig., 2006 WL 2398744, *5 (D.D.C. June 30, 2006) (overruling party's objection based on excessive number of interrogatories and ordering that "[s]ubject to any objections unrelated to the number of interrogatories, ULLICO will provide its responses to [certain interrogatories] within [a certain time frame]") (emphasis added). To do otherwise would unfairly penalize Mitchell for relying in good faith on the 25-interrogatory limitation that the Court included in its Rule 16(b) Scheduling Order.

(Doc. 161, at 1-4 (footnote added))

## **CONCLUSIONS OF LAW**

1. As previously indicated, this Court's Rule 16(b) scheduling order, entered on May 31, 2007, limits each party to serving upon any other

part "[n]ot more than **25** interrogatories, including all discrete subparts[.]" (Doc. 13, ¶10.a.)  Moreover, Rule 33(a)(1) of the Federal Rules of Civil Procedure provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."

2.     While, as one court has indicated, "[t]he word, 'discrete,' essentially means, 'separate[,]'" *Kendall v. GES Exposition Services, Inc*., 174 F.R.D. 684, 685 (D. Nev. 1997), the majority of district courts to have addressed the issue are in agreement that the process of "[i]dentifying a 'discrete subpart' has proven difficult." *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D. D.C. 2004); *see also Oliver v. City of Orlando,* 2007 WL 3232227, *2 (M.D. Fla. 2007) ("'Resolving questions of whether a subpart to an interrogatory is "discrete" under Rule 33 such that it should be counted separately can be a difficult task' and 'courts considering this question have applied various tests.'"); *Williams v. Taser Int'l, Inc.,* 2007 WL 1630875, *2 (N.D. Ga. 2007) ("Courts have recognized that resolving the question of whether a subpart to an interrogatory is 'discrete' under Rule 33 such that it should be counted separately can be a difficult task."); *Johnson v. Kraft Foods North America, Inc*., 2006 WL 3143930, *1 (D. Kan. 2006) ("Rule 33(a) does

28

not define the term 'discrete subparts,' and courts have struggled to interpret the term's meaning.").

3.      District courts in the Eleventh Circuit, like most district courts in other circuits, have adopted and applied "the 'related question' test to determine whether the subparts are discrete, asking whether the particular subparts are 'logically or factually subsumed within and necessarily related to the primary question.'" *Forum Architects, LLC v. Candela*, 2008 WL 217119, *1 (N.D. Fla. 2008), citing *Oliver v. City of Orlando*, 2007 WL 3232227 (M.D. Fla. 2007) and *Williams v. Taser Int'l, Inc*., 2007 WL 1630875 (N.D. Ga. 2007); *see also Estate of Manship v. United States*, 232 F.R.D. 552, 554-555 (2005) ("[T]he issue in this motion is whether the interrogatory subparts are 'logically or factually subsumed within and necessarily related to the primary [interrogatory] question.' . . . In making this determination, the Court should decide whether the first question is primary and subsequent questions are secondary to the primary question; or whether the subsequent question could stand alone and is independent of the first question? . . . In other words, '[i]f the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not "factually subsumed within and necessarily related to the primary

question".'"), *aff'd*, 2006 WL 594521 (M.D. La. 2006); *Kendall, supra*, 174 F.R.D. at 685-686 ("Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related."); *see Theobles v. Industrial Maintenance Co.*, 247 F.R.D. 483, 485 (D. V.I. 2006) ("'[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated.'"); *In re ULLICO Inc. Litigation*, 2006 WL 2398742, *2 (D. D.C. 2006) ("In analyzing whether a subpart is a separate question, the Court looks to whether the subpart 'introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it.' . . . An interrogatory 'directed at eliciting details concerning a *common theme*' should not be counted as multiple interrogatories. . . . This Court has rejected

30

as unfair the 'draconian approach of counting every subdivision of an interrogatory as a separate question.'").

> [T]he related question test is the better of the two. First, the related question test is consistent with Rule 33's Advisory Committee's Notes. *See* Fed.R.Civ.P. 33 advisory committee notes to 1993 Amendment (stating that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication"). Second, while the Court recognizes that answering interrogatories may be burdensome and that propounding numerous interrogatories may be used as a tool for harassment, it is of the view that an overly restrictive reading of Rule 33's numerical limit would too quickly exhaust the propounding party's supply of interrogatories, and unnecessarily limit that party's fact-gathering ability. Such a result would be not only inconsistent with both the broad discovery envisioned by the Federal Rules, but also their purpose of narrowing the factual issues to be resolved at trial and ensuring that all parties to litigation are possessed of relevant facts.

*Williams, supra*, at *2 (case citations omitted).

4.    Having identified the general test which will guide the undersigned's counting of interrogatory subparts, the Magistrate Judge must also acknowledge some more specific rules which have or will necessarily impact that count. First, "a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories." *Banks, supra*, 222 F.R.D. at 10; *see also id.* ("The first and most obvious example is the combining in a single interrogatory of a demand for information

31

and a demand for the documents that pertain to that event. Clearly, these are two distinct demands because knowing an event occurred is entirely different from learning about the documents that evidence it occurred."). Moreover, in *IOSTAR Corp. v. Stuart*, 2008 WL 1924209, *1 (D. Utah 2008), the court recognized that "[i]nterrogatories which ask for 'substantive information, a separate identification of witnesses, and a separate identification of documents' are indeed compound, and have been held to have three discrete subparts."

5.      Prior to specifically addressing each interrogatory, the undersigned notes that after the hearing on May 15, 2008, the moving party redacted all demands for documents (or document identification) contained in the interrogatories served upon the plaintiff. While plaintiff makes the argument that this Court must view the interrogatories as initially served, it cites to no authority for that proposition. Accordingly, this argument is rejected and the undersigned will consider each of the twenty-four interrogatories propounded by Matthews to the Mitchell Company in the redacted manner set forth in the moving defendant's brief on counting (Doc. 147).

6.      In light of the foregoing, the Court makes the following determinations:

(a) Interrogatory 1 is found to be but one interrogatory. The primary question is directed to identifying any Mitchell Company person with personal knowledge or information, etc., about plaintiff's claims or allegations in the complaint. The secondary question asks that for each person identified in response to the primary question, the facts and information known by each such person. The undersigned finds that facts and information specifically known by a party and its employees are logically and factually subsumed within the primary question asking for identification of individuals possessing relevant facts and information about the complaint and the claims contained therein;

(b) Interrogatory 2 is found to be but one interrogatory. The primary question asks for a list of all legal matters plaintiff claims it established an attorney-client relationship with Matthews. The undersigned finds that the four remaining inquires about dates each relationship began and ended, the scope of each relationship, and the work performed by the defendant during the relationship are all logically and factually subsumed within the primary inquiry about identifying each attorney-client relationship;

(c) Interrogatory 3 is found to be two interrogatories. First, the interrogatory asks plaintiff to state, with respect to each legal matter identified

in response to Interrogatory 2, whether Matthews failed to perform satisfactorily, or made any omission in his performance of work. The related subpart contained in this interrogatory asks plaintiff to specifically state how Matthews' performance was unsatisfactory. The undersigned, however, cannot find that Matthews' request for the identification of all employees, etc. of TMC with knowledge of, or who possess documents relating to, Matthews' unsatisfactory performance is logically and factually subsumed in the identification of such unsatisfactory performance. *See Stuart, supra,* at *1 ("Interrogatories which ask for 'substantive information, a separate identification of witnesses, and a separate identification of documents' are indeed compound, and have been held to have three discrete subparts."). This subpart can stand on its own;

(d) Interrogatory 4 is found to be but one interrogatory; plaintiff makes no argument to the contrary;

(e) Interrogatory 5 is found to be one interrogatory, plaintiff, again, making no argument to the contrary;

(f) Interrogatory 6 is found to be just one interrogatory. The primary question requests identification of all employees, etc., of TMC who had any written or oral communications with Matthews. The undersigned finds that the

three remaining inquires about dates each such identified employee's employment with plaintiff, the position(s) held by such individual, and job descriptions for each identified individual are all logically and factually subsumed within the primary inquiry about identifying each employee, etc., who communicated with Matthews. As is clear from plaintiff's response, this interrogatory does not request the "moon" and, therefore, providing the information requested by this defendant would not prove overly burdensome;

(g) Interrogatory 7 is found to be one interrogatory; plaintiff makes no argument to the contrary;

(h) Interrogatory 8, a contention interrogatory, is counted as two interrogatories. While the primary focus is upon identification of all alleged "simultaneous representations" and the undersigned agrees with Matthews that a description of the facts, information, and knowledgeable witnesses to these allegations of simultaneous representation are subsumed within the primary question, the request for "all alleged statements or representations made by Defendant Matthews that relate to these allegations" and the identification of "the substance of the alleged representation, [and] the date and place the alleged representation was made," is quite a different matter, such that a request for this information can stand on its own;

(i)  Similarly,  Interrogatory  Nos.  9-13,  five  more  contention interrogatories,  are  counted  as  two  interrogatories  each  based  upon  the reasoning set forth with respect to Interrogatory No. 8;

(j) Interrogatory No. 14 is counted as one interrogatory. The primary question  asks  for  a  list  of  every  misleading  or  false  statement  made  by Matthews relating to plaintiff's claims.  The undersigned finds that the three remaining inquires about dates of the alleged misrepresentations, the substance of the alleged misrepresentations, and all witnesses with personal knowledge of the alleged representations are all logically and factually subsumed within the primary inquiry about identifying each misleading or false statement made by Matthews;

(k) Interrogatory No. 15 is counted as one interrogatory based upon the same  reasoning  as  given  for  Interrogatory  No.  14.  With  respect  to  this interrogatory,  the  primary  question  asks  for  a  list  of  every  material  fact suppressed by Matthews.  Again, the undersigned finds that the two remaining inquires about the substance of the alleged suppressions and all witnesses with knowledge of the alleged suppressions are logically and factually subsumed within  the  primary  inquiry  about  identifying  each  fact  suppressed  by Matthews;

36

(l) Matthews concedes that Interrogatory No. 16 should be counted as two interrogatories. The undersigned is of the opinion that this convoluted interrogatory should be counted as three interrogatories. While defendant may correctly argue that the primary question asks for information relating to TMC's due diligence and decision making process for purchasing the properties at issue (Doc. 147, at 16), the undersigned finds that TMC's due diligence regarding these properties and the corporation's decision making process for purchasing the properties are improperly lumped together. Certainly, a question about TMC's due diligence could stand on its own separate and apart from a question about TMC's decision making process for purchasing the properties. Because Matthews concedes that information about negotiations between TMC and third parties concerning the plaintiff's purchase of the subject properties is a separate interrogatory, the undersigned concludes that Interrogatory No. 16 should be counted as three interrogatories;

(m)     Interrogatory No. 17 is counted as one interrogatory. The primary question asks for plaintiff's identification of its expert witnesses. The undersigned finds that the remaining inquires about each expert's address, occupation, place of employment, qualifications, list of publications, opinions to be expressed and the reasons therefor, all data and information considered

in forming opinions, exhibits to be used as support for the opinions, compensation paid for study and testimony, and a list of other cases the individual has appeared as an expert in the last four years, are all logically and factually subsumed within the primary inquiry about identification of each of plaintiff's expert witnesses. *See Candela, supra*, at *2 ("No. 1 of the Second Set . . . asks for the expert witnesses Plaintiff intends to call at trial and then asks related and connected questions such as their addresses, qualifications, subject matter of their testimony, and grounds for their opinions. Plaintiff's motion is clearly not well taken as to this interrogatory.");

(n) Interrogatory Nos. 18 and 19 do not contain subparts; they are counted as one interrogatory each;

(o) Interrogatory No. 20 is counted as one interrogatory. The primary question asks for each item of damage or injury for which plaintiff seeks compensation. The undersigned finds that the two remaining inquires regarding the specific dollar amount for each item of damage or injury and the methods for computation of same are all logically and factually subsumed within the primary inquiry. *See Candela, supra*, at *2 ("No. 2 asks for a list of damages, and includes the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what. The

motion is not well taken as to this interrogatory.");

(p) Interrogatory No. 21 is counted as two interrogatories. While the undersigned sees a connection between when TMC first became aware about the availability for purchase of each piece of property identified in the complaint and the actions taken by TMC to assess the fair market value of each piece of property, as well as the identity of persons involved in such actions, the Magistrate Judge is unable to discern a connection between actions surrounding the purchase of the property with actions taken to actually develop or sell the property. In other words, the inquiry about actions taken by plaintiff to actually develop and sell the subject properties introduces a line of inquiry separate and distinct from the inquiry about when TMC first became aware of the availability of each piece of property and assessed the fair market value of same;

(q) Interrogatory No. 22 is counted as one interrogatory. The primary question asks for identification of any employee, etc., of TMC with any education or experience in real estate valuation, investment or development. The second portion simply asks for the specific education, experience or training of each such person identified. As defendant correctly argues, this subpart is logically and factually subsumed by the primary question;

39

(r) Interrogatory No. 23 is counted as one interrogatory. The primary question asks for plaintiff's identification of real estate it has owned, bought, etc., in Mobile and Baldwin Counties in Alabama and in the Florida Panhandle since 1997. The undersigned finds that the four remaining inquires about date of acquisition, purchase price, the nature of TMC's activity concerning the property, and its current status of ownership or other activity regarding the properties, are all logically and factually subsumed within the primary inquiry about the identification of each such piece of real estate;

(s) Interrogatory No. 24 is counted as one interrogatory since it seeks all facts, information and knowledgeable witnesses on which TMC relies in denying a portion of Request for Admission No. 2. (*See* Doc. 147, at 21 & Exhibit A) Plaintiff has admitted all Request for Admissions save a portion of Request for Admission No. 2. (*See id*.) Had plaintiff denied all requests for admission, the undersigned necessarily would have determined that this interrogatory should be counted as eight interrogatories. *Compare id. with Stuart, supra,* at *1 ("The 25th interrogatory asks for the basis of denial of each of Stuart's 12 requests for admission. Another case has held that '[a]llowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of [the] requests for admissions were

40

based . . . essentially transforms each request for admission into an interrogatory.'"). Since the interrogatory is directed solely to plaintiff's basis of denial of that portion of Request for Admission No. 2 denied, it necessarily constitutes only one interrogatory.

7.      In light of the foregoing, the undersigned finds that Matthews served a total of 33 interrogatories upon plaintiff, thereby exceeding the limit of 25 placed upon the parties in the Rule 16(b) scheduling order and by Fed.R.Civ.P. 33. In responding to the propounded interrogatories, plaintiff stopped after answering Interrogatory No. 9, claiming those 9 interrogatories actually amounted to at least 25 interrogatories. Based upon the undersigned's analysis, Interrogatories 1 through 9 constitute a total of 12 interrogatories. Accordingly, Matthews' motion to compel further responses to interrogatories (Doc. 131; *see also* Doc.147) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is **ORDERED** to serve Matthews with responses to Interrogatory Nos. 10, 11, 12, 13, 16, 17, and 20, as these interrogatories total 13 additional interrogatories, on or before **June 30, 2008**.[3]

---

[3]      If Matthews desires plaintiff to answer interrogatories other than the ones identified by the Court, plaintiff is to allow Matthews to designate those interrogatories to which a response is to be served. The interrogatories are to be counted as set forth in this order and Matthews' designation of interrogatories to which plaintiff is to serve a response shall not exceed 13 additional interrogatories, for a total of 25.

## CONCLUSION

In light of the foregoing, Matthews' motion to compel plaintiff to adequately respond to propounded interrogatories (Doc. 131; *see also* Doc. 147) is **GRANTED IN PART AND DENIED IN PART** as specifically set forth in the body of this order.

**DONE** and **ORDERED** this the 16th day of June, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**