IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE MITCHELL COMPANY, INC.,          :

    Plaintiff,                                    :

vs.                                                       :        CA 07-0177-KD-C

JOSEPH J. CAMPUS, III, et al.,          :

    Defendants.

**REPORT AND RECOMMENDATION**

This cause is before the Court on defendant Joseph J. Campus, III's motion for sanctions (Doc. 269) and plaintiff's objection to the motion for sanctions (Doc. 274). The motion for sanctions has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and SD ALA LR 72.2, since the primary sanction Campus seeks is the dismissal of plaintiff's complaint with prejudice (*see* Doc. 269, at 13). Upon a review of the motion, objection, and all other relevant pleadings in the file, the Magistrate Judge recommends that Campus' motion for sanctions (Doc. 269) be **GRANTED IN PART** and **DENIED IN PART**.

## FINDINGS OF FACT

1.  As established by previous order, one day prior to the filing of the instant lawsuit agents of The Mitchell Company, Inc. ("TMC") secured from Campus' Cedar Street office in Pensacola, Florida some 23 bankers' boxes of documents. (Doc. 121, at 2) Many of the documents gathered that day, more than 15 boxes worth, were of a nature personal to Campus. (*See id*. at 3-8 & 12) Even though TMC eventually returned the originals of these personal documents to Campus, it retained copies of some of those documents, including bank statements and tax returns. (*Id*. at 7-8 & 12)

2.  On April 7, 2008, the undersigned found that TMC's conduct amounted to unwarranted self-help discovery and, as a result, ordered the following: "Plaintiff is **ORDERED** to return to Campus all copies of the improperly acquired/retained documents in its possession (i.e., all documents of a personal and private nature to Campus, including bank statements, tax returns, and the like), as well as any notes or other materials summarizing, quoting from, or otherwise recording information concerning the nature or contents of those documents. In addition, plaintiff is **ORDERED** to refrain from making any use of any of the foregoing documents until such time as it may acquire such documents through the formal discovery process. The undersigned declines to grant any other relief against plaintiff or its attorneys

at this time." (*Id.* at 13-14)

       3.      TMC appealed the April 7, 2008 order on April 18, 2008 (Doc. 128; *see also* Doc. 129) and that same date requested the undersigned to stay enforcement of the order pending appeal of same (Doc. 130). Following a consideration of TMC's motion and Campus' response (Doc. 137),[1] the undersigned granted plaintiff's motion for stay (Doc. 139).

> In staying the order, however, plaintiff is reminded that the undersigned specifically directed it to refrain from making any use of the improperly acquired/retained documents "until such time as it may acquire such documents through the formal discovery process." Should the April 7, 2008 order be affirmed on appeal by the Court and it is brought to the undersigned's attention, by separate motion, that plaintiff engaged in conduct specifically circumscribed in that order, an award of ***sanctions*** would be appropriate.

(*Id.* at 1-2 (internal citations omitted; emphasis supplied)) The Court denied plaintiff's appeal by order dated May 13, 2008. (Doc. 144; *see id.* at 3 ("[T]he Court concurs in the conclusion reached by Judge Cassady that all copies of Joseph Campus's personal documents should be returned. However, in no way should this order convey the conclusion that plaintiff did not have the

---

[1] Campus attached to his response TMC's second request for production of documents, same reflecting that plaintiff utilized the subject documents in preparing its discovery requests to Campus. (*See id.*, Exhibit B) This is why the undersigned again cautioned TMC against use of such documents until they had been produced during the regular course of discovery. (Doc. 139, *infra*)

right to search defendant Campus's office upon his termination and initially view his personal and professional documents which were on defendant's property. However, retaining copies of these documents for use in this litigation was not proper."))

      4.      On May 23, 2008, TMC filed a motion for protective order and for reconsideration of order on appeal (Doc. 150)[2] and, in addition, sought a stay of the May 13, 2008 order pending reconsideration of same (Doc. 151). Plaintiff's motions were denied by order dated June 13, 2008. (Doc. 170)

> Plaintiff alleges that because the court did not condemn the initial viewing of the personal documents that "it logically follows, then, that it was lawful for the Mitchell Company, its attorneys, and their agents to make records and notes relative to the information obtained during its lawful review of these materials." Plaintiff's logic is incorrect and does not reflect the views of this court.
>
> As a point of clarification, if the plaintiff believes that

---

[2] This document reveals that TMC used Campus' personal documents for much more than just preparing its complaint. (*See id.* at ¶ 6 ("To comply with the Magistrate's Order, this Court would be ordering Plaintiff's counsel to turn over to defense counsel their handwritten notes, letters, memos, e-mails, phone records, reports, etc. which reference in any way the subject documents. These communications would include not only those of each individual attorney but also those between that attorney and their client, co-counsel, staff, investigators, and potential experts, all of which would contain counsel's mental operations, work product and privileged communications. Furthermore, the time and expense required of each person to: a) review all these sources of communication from March 6, 2007 to date (undoubtedly encompassing thousands of communications); b) determine if they are covered by the Order; c) if so, retrieve all copies of such documents from all other locations; and d) redact portions of the same documents which are not covered by the Order; would compound what is already an unduly burdensome and highly prejudicial situation."))

> the documents containing the personal information are work product or attorney-client privilege, it should provide this material to Magistrate Judge Cassady for a determination of such. Moreover, to be clear, the plaintiff can make no use of the contents of Campus' personal information until and unless it is obtained properly through discovery.

(*Id.* at 1-2)

5.     Despite the clarity of the foregoing orders, TMC's Lindsey C. Boney, III, gave a sworn statement on September 10, 2008 that the company's investigators were putting "stuff" together "using documents that [] the courts said we weren't supposed to have." (Doc. 269, Exhibit A, Sworn Statement of Lindsey C. Boney, III, at 256; *see id.* ("So the less of that stuff I saw, the better off I was.")) In addition to Boney's implication that TMC was still making use of the documents this Court ordered plaintiff to return to Campus, Campus contends that such use is confirmed by the fact that plaintiff included as part of an evidentiary submission filed on July 29, 2009 a letter to Campus' company, Three Seas, LLC, from Whitney Bank listing account information for Three Seas, LLC (*see* Doc. 253, Exhibit EE), despite the fact that this document was never produced by Campus to TMC pursuant to any discovery requests, instead same being seized by TMC from Campus' office and produced by plaintiff itself as part of its initial disclosures (*compare* Doc. 269, at 4 *with* Doc. 269, Exhibit B, Three Seas, LLC Letter).

6. Based upon the foregoing, Campus filed the instant motion for sanctions on August 11, 2009 seeking dismissal of plaintiff's complaint with prejudice and imposition of attorneys' fees for bringing the motion. (*See* Doc. 269, at 13)

7. TMC focuses its objection to sanctions on explaining away the implication created by Boney's statement and the attachment of the Three Seas, LLC letter as an exhibit to its response in opposition to the motion for summary judgment filed by James Young (*see* Doc. 253, Exhibit EE). TMC attached to its objection to Campus' motion for sanctions the affidavit of Lindsey Boney, TMC's Chief Financial Officer. (Doc. 274, Exhibit 1, Affidavit of Lindsey Boney, III)

> On September 10, 2008, I gave a sworn statement to Scott Dickens, attorney for The Hartford Insurance Company, in connection with our pending theft claim under our crime policy dealing with money taken by Joe Campus. On page 256 of my sworn statement, I answered a question . . . dealing with members of various limited liability companies in which I may have known that Joe Campus was a member. The answer given by me on page 256, lines 10-15, was a narration of certain *past* history wherein I incorrectly and inartfully used the *present* tense; however, I intended my answer to be in the past tense and I should have used the verb "were." I did not realize that my sworn statement was unclear until I learned that Mr. Campus had filed the motion for sanctions. If this had been brought to my attention during that proceeding, I would have clarified the inartfully worded statement immediately on the record, and would have explained that I was only trying to convey that investigators had used documents that this Court

6

> later ordered to be returned to Mr. Campus. I never meant to convey by my sworn statement that the investigators were, at that time, still using Mr. Campus' personal documents that this Court had previously ordered to be returned to him.
>
> []   The reference in the last sentence in my answer to "the less of that stuff I saw, the better off I was," was interjected because, in the beginning of our litigation against Joe Campus, the investigators looked at documents that the Court later ruled must be returned. As a retrospective observation, I was testifying that the less I knew about those documents, the better off I was because I did not want to be in the position of knowing and giving information about prohibited documents ever.

(Doc. 274, Exhibit 1, Boney aff., at ¶¶ 2-3) By way of explaining how the Three Seas, LLC letter inadvertently made its way into the record, TMC attaches to its objection to the motion for sanctions the affidavits of Charles A. Dauphin, Esquire, and Jebbie Austin. (Doc. 274, Exhibits 2 & 3) Austin's affidavit reads:

> 1.   I am a paralegal with the law firm of Lyons, Pipes & Cook, P.C., and have been involved in this case for approximately two years. I assisted in organizing our file in this case. As part of the organization of this file, I kept in my office a white notebook that, to the best of my knowledge, we received from outside investigators. We received the notebook prior to the filing of Mr. Campus' Motion for Equitable Relief (Doc. 99) and prior to the issuance of this Court's Order of April 7, 2008 (Doc. 121).
>
> 2.   I believed at the time, and continued to believe until Campus filed his motion for sanctions, that this notebook exclusively contained public records, obtained through public sources, relating to the various limited liability companies of

which Mr. Campus and Mr. Young were owners or members. Based on this belief, I only performed a limited, cursory review of the notebook prior to Mr. Campus' filing of the Motion for Sanctions, and never realized that there were any private, non-public documents in the notebook.

3. I assisted another of The Mitchell Company's attorneys, Chuck Dauphin, with the exhibits used at the deposition of Edsel Matthews. While preparing for the deposition, Mr. Dauphin asked me to retrieve for him a copy of the incorporation documents regarding Three Seas, LLC. In response, I copied from the white notebook what I believed to be the Articles and Amended Articles of Organization for Three Seas, LLC. Those copies ultimately became TMC Exhibit 292 to Mr. Matthews' deposition, and were subsequently included as Exhibit "EE" in support of The Mitchell Company's Brief in Opposition to Young's Motion for Summary Judgment. I do not remember any occasion that called for me to retrieve any document from this notebook, other than the one occasion on which I retrieved the documents that ultimately became Exhibit 292 to Matthews' deposition.

4. The letter from Whitney Bank was included in the white notebook with the Articles and Amended Articles of Organization for Three Seas, LLC. Because I believed that the notebook only contained public record documents from public sources, and because the Whitney Bank letter was with the Articles and Amended Articles, it appeared to me that the letter was part of the recorded documents. After I read Campus' Motion for Sanctions and concluded that I was wrong, I immediately brought it to the attention of Walter Cook and handed him the notebook.

5. After I gave the notebook to Walter Cook, he quarantined it and no one has used the notebook, in any form or fashion, since it was quarantined. Again, to reiterate, to my knowledge, the sole and exclusive time that anyone used this notebook was when I copied from the notebook the

> incorporation documents for Three Seas, LLC, which became Exhibit 292 and Exhibit "EE."

(Doc. 274, Exhibit 3, Affidavit of Jebbie R. Austin, at ¶¶ 1-5) In addition, Dauphin's affidavit reads as follows:

> 1.    My name is Charles A. Dauphin, and I am one of the attorneys representing The Mitchell Company in this case. On June 25, 2009 I took the deposition of Edsel F. Matthews, Jr., an alleged co-conspirator and previously named Co-Defendant who has been dismissed from the case due to a settlement.
>
> 2.    Prior to Matthews' deposition, I asked a paralegal to obtain any incorporation documents in the file regarding Three Seas, LLC, as I intended to ask Matthews about the ownership of Three Seas, LLC, and any change in that ownership.
>
> 3.    Joe Campus had testified in his deposition that he was not the sole owner and member of Three Seas, LLC. According to his deposition testimony, there was a mix-up in the documents that were recorded, and Campus intended to be a member along with his son Joe Campus, IV.
>
> 4.    During Matthews' deposition I asked Matthews whether he created Three Seas, LLC to which he responded: "I think we did." I then asked him whether Campus was the sole member of Three Seas, LLC to which Matthews responded he did not recall. I then marked as TMC Exhibit 292 a series of documents which contained certain Articles of Organization and Articles of Amendment to Articles of Organization of Three Seas, LLC. I then asked Matthews if he prepared the Articles of Amendment to which he responded he did not. According to the Articles of Amendment, Joe Campus, III was the sole member of Three Seas, LLC. Matthews testified this meant that the Articles of Organization of Three Seas, LLC had been amended to provide that there was only [one] member,

9

which (sic) was Joe Campus, III.

5.   Attached to the Articles of Organization and Amendment to Articles of Organization of Three Seas, LLC which comprised TMC Exhibit 292, was a letter from Whitney Bank to Joe Campus pertaining to the creation of a bank account for Three Seas, LLC. When I was given these documents which comprise TMC Exhibit 292, I assumed they were from the files Matthews[] had produced, as it was my understanding prior to his deposition that he had prepared the incorporation papers for Three Seas, LLC. I noticed the letter from Whitney Bank but assumed it had been attached to the incorporation papers by Matthews. Thus, I left it as part of the exhibit. Neither Matthews nor any lawyer, objected to, or questioned, the inclusion of the letter as part of the exhibit.

6.   I was unaware that the letter was one of the documents which had been collected by TMC from its Pensacola office upon the termination of Joe Campus.

7.   The Whitney Bank letter was of no consequence to the deposition, and is of no consequence to this case. The only reason it was included as part of TMC Ex. 292 was my understanding that the Whitney Bank letter had been attached to the incorporation papers by Matthews and had been included in the documents he produced pursuant to discovery propounded to him.

(Doc. 274, Exhibit 2, Affidavit of Charles A. Dauphin, at ¶¶ 1-7 (internal citations omitted))

## **CONCLUSIONS OF LAW**

1.   The Supreme Court has long made clear that district courts possess the inherent power to police their dockets. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 629-630, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); *see*

*also Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) ("Courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal."). "The sanctions imposed can range from a simple reprimand to an order dismissing the action with or without prejudice." *Mingo v. Sugar Cane Growers Co-op of Florida*, 864 F.2d 101, 102 (11th Cir. 1989); *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) ("As we recognized in *Roadway Express*, outright dismissal of a lawsuit, which we had upheld in *Link*, is a particularly severe sanction, yet is within the court's discretion. . . . Consequently, the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well.").

    2.    As the Eleventh Circuit has recognized, a court may dismiss a case with prejudice either pursuant to its inherent power to manage its docket or based upon Rule 41(b) of the Federal Rules of Civil Procedure. *Betty K. Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005); *see also Dinardo v. Palm Beach County Circuit Court Judge*, 199 Fed.Appx. 731, 735 (11th Cir. 2006).[3] Under either authority, a dismissal with prejudice "is an extreme sanction that may be properly imposed *only* when: '(1) a party

---

[3]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

11

engages in a clear pattern of delay or willful contempt (contumacious conduct[4]); and (2) the district court specifically finds that lesser sanctions would not suffice.'" *Betty K. Agencies, Ltd., supra,* 432 F.3d at 1338 (emphasis in original; citations omitted; footnote added); *see also Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) ("Dismissal with prejudice is not proper unless 'the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct.'"), *cert. denied*, 549 U.S. 1228, 127 S.Ct. 1300, 167 L.Ed.2d 113 (2007).[5] A "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances[,]" *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) (citation omitted); *see also Abreu-Valez v. Board of Regents of the University System of Georgia,* 248 Fed.Appx. 116, 118 (11th Cir. 2007) ("A dismissal with prejudice is a 'drastic remedy to be used only in those situations where a lesser sanction would not better serve the interests of justice.'"); *Betty K. Agencies, Ltd., supra,* 432 F.3d at 1339 ("[D]ismissal with prejudice is plainly improper unless and until the district court finds a

---

[4] Contumacious conduct is "[a] willful disobedience of a court order." Black's Law Dictionary, at 337 (9th ed. 2009).

[5] While Campus encourages this Court to apply the six-factor test discussed at length in *Perna v. Electronic Data Systems, Corp.,* 916 F.Supp. 388, 398-402 (D. N.Y. 1995) in exercising its inherent power to dismiss plaintiff's complaint with prejudice, it is not necessary to seek guidance from *Perna* given the wealth of law in this circuit on the issue.

clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct."); *see Chambers, supra,* 501 U.S. at 64, 111 S.Ct. at 2143 ("Like all applications of inherent power, the authority to sanction bad-faith litigation practices can be exercised only when necessary to preserve the authority of the court."), and "is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable[,]" *Betty K. Agencies, Ltd., supra*, 432 F.3d at 1338 (citation omitted); *see also Dinardo, supra,* 199 Fed.Appx. at 735 (same); *see Kleiner, supra,* 751 F.2d at 1209 ("Since misconduct by a party courts the risk of outright dismissal, lesser sanctions undoubtedly attend the court's inherent power to discipline intentional attorney misconduct[.]").

   3. With respect to the first prong, it is clear that "[m]ere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct." *Zocaras, supra*, 465 F.3d at 483 (citation omitted); *see also Baltimore v. Jim Burke Motors, Automotive,* 300 Fed.Appx. 703, 707 (11th Cir. 2008) (same); *see Kilgo v. Ricks*, 983 F.2d 189, 192-193 (11th Cir. 1993) ("'A finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of willful delay; simple negligence does not warrant dismissal.'"). Moreover, as to the second prong, "consideration of lesser sanctions 'need not be explicit.'" *Abreu-Valez,*

13

*supra,* 248 Fed.Appx. at 118 (citation omitted); *see also id*. ("[W]hile this court has 'occasionally inferred such a finding, as where lesser sanctions would have "greatly prejudiced" defendants, it has "never suggested that the district court need not make that finding . . . ."'").

   4. With these principles in mind, the undersigned considers the specific conduct of TMC and its attorneys. As previously indicated, Lindsey C. Boney, TMC's Chief Financial Officer gave a sworn statement on September 10, 2008 wherein he indicated that the company's investigators were putting "stuff" together "using documents that [] the courts said we weren't supposed to have." (Doc. 269, Exhibit A, Boney Statement, at 256) At this juncture in his statement to an attorney for The Hartford Insurance Company in connection with TMC's pending theft claim under its crime policy dealing with money taken by Campus, Boney was referencing various limited liability companies (including Three Seas, LLC) in which Campus was a member. (*Id.*; *see also* Doc. 274, Exhibit A to Boney aff.) Given the context in which the pivotal statement arose, that is, Boney's knowledge of limited liability companies of which Campus was a member while employed by TMC, this Court can at best infer that, as of September 10, 2008, TMC was still making use of the documents this Court ordered TMC to return to Campus. However, even this inference begins to fall away once the

14

undersigned considers Boney's reasonable and logical explanation that his sworn statement involved a narration of past history and he was only trying to convey to the attorney taking the statement that TMC's investigators had used documents at one point in time which this Court later ordered returned to Campus. (*Compare* Doc. 274, Exhibit 1, Boney aff., at ¶ 2 *with* Exhibit A to Boney aff.) The undersigned simply cannot find that such inferential conduct by plaintiff rises to the level of willful disobedience of this Court's previous orders warranting dismissal of the complaint, even when same is combined with the actions of one of its attorneys and paralegals in attaching one of Campus' personal documents, that is, a Three Seas, LLC bank account letter, as part of an exhibit to Edsel Matthews' deposition and as part of an evidentiary submission filed on July 29, 2009 in opposition to James Young's motion for summary judgment. *Compare Gratton v. Great American Communications*, 178 F.3d 1373, 1375 (11th Cir. 1999) ("In addition to Gratton's spoilation of evidence and flouting of the district court's order to explain the spoilation, Gratton intentionally misidentified a witness, ignored the court's order to release medical records, and failed to appear at a hearing for reconsideration of the court's order dismissing the case, claiming his attorney had never informed him of the hearing. . . . Gratton claims that inadequate representation by counsel makes dismissal too severe a sanction.

We have held that a court should be reluctant to impose the harsh sanction of dismissal with prejudice where the plaintiff is not actually culpable, but where any other sanction would fail to cure the harm that the attorney's misconduct would cause to the defendant, dismissal may be appropriate. . . . Here, the district court found that plaintiff was culpable, and found no other sanction would cure the harm. Moreover, the district court found that Gratton bore 'substantial responsibility' for the delays, by his spoilation of evidence and misidentification of a witness, among other things. Additionally, the court ***twice tried lesser sanctions***, and found that these did not deter Gratton's conduct. In sum, because the record supports the district court's finding of willful noncompliance and shows that lesser sanctions would not suffice, dismissal was not an abuse of discretion.") *with World Thrust Films, Inc. v. International Family Entertainment, Inc.,* 41 F.3d 1454, 1456-1457 (11th Cir. 1995) ("We need not decide [] whether the conduct of World Thrust's lawyers was contumacious because the district court failed to make the necessary finding that lesser sanctions would not suffice in this instance, as required in the second prong of the inquiry. 'Although we occasionally have found implicit in an order the conclusion that "lesser sanctions would not suffice", we have never suggested that the district court need not make that finding, which is essential before a party can be penalized for his attorney's

16

misconduct.' . . . This court has only inferred such a finding 'where lesser sanctions would have "greatly prejudiced" defendants.' . . . Because we cannot envision how the appellees would have been greatly prejudiced through the imposition of lesser sanctions, we refuse to infer a finding that lesser sanctions would not have sufficed in this case. Therefore, we conclude that the district court failed to follow the second prong of the Eleventh Circuit standard and abused its discretion in dismissing the complaint."). The affidavits of Charles Dauphin, Esquire, and Jebbie Austin satisfy the undersigned that attorney/paralegal negligence explains the inadvertent attachment of the Whitney Bank letter as part of an exhibit to Matthews' deposition as well as part of an attachment to plaintiff's response in opposition to Young's motion for summary judgment. The undersigned declines to ascribe attorney negligence to a party particularly where, as here, the personal document at issue (the Whitney Bank letter) has no relevance to this litigation. Accordingly, the conduct of TMC and its attorneys does not amount to contumacious conduct warranting dismissal of the complaint with prejudice. Nevertheless, such attorney negligence/inadvertence and the loose testimony given by an agent of plaintiff, despite the clear directives of this Court, has multiplied the litigation in this lawsuit and necessitates the imposition of sanctions. The undersigned finds that the lesser sanctions of

17

ordering the payment of attorneys' fees associated with the filing of the motion and the production of the contents of the white notebook for inspection by Campus will adequately address the conduct of TMC and its attorneys. Accordingly, it is **RECOMMENDED** that TMC and its attorneys be **ORDERED** to reimburse Campus, in equal shares, his attorneys' fees for bringing the instant motion for sanctions.[6] In addition, it is **RECOMMENDED** that TMC's attorneys be **ORDERED** to tender to the attorneys for Campus the white notebook referenced in Jebbie Austin's affidavit.[7]

## **CONCLUSION**

The undersigned is of the opinion that the motion for sanctions filed by defendant Joseph J. Campus, III (Doc. 269) should to be **GRANTED IN PART** and **DENIED IN PART**. The undersigned **RECOMMENDS** that the Court **DENY** that portion of the motion which seeks a dismissal of TMC's complaint with prejudice. However, it is recommended that the motion be

---

[6] Counsel for the parties are **ORDERED** to negotiate in good faith regarding the attorneys' fees associated with the filing of the motion for sanctions and should only bring this issue back to the attention of the undersigned if counsel are unable to agree upon a reasonable award.

[7] If the information gleaned by the undersigned from Austin's affidavit about the contents of the white notebook has been misinterpreted and that notebook actually contains documents which would prejudice plaintiff if turned over to Campus' attorneys, plaintiff may withhold the putatively prejudicial documents and file them under seal with the Court.

**GRANTED** to the extent Campus seeks an award of attorneys' fees incurred in filing the motion for sanctions. In addition, it is **RECOMMENDED** that TMC's attorneys be **ORDERED** to turn over to Campus' attorneys the white notebook referenced in Jebbie Austin's affidavit.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 4th day of September, 2009.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.